CONTROLLED DEMOLITION, INCORPORATED, Plaintiff–Appellant,

v.

F.A. WILHELM CONSTRUCTION COMPANY, INCORPORATED, Mansur Development Corporation and Aetna Life Insurance Company, Defendants–Appellees.

No. 95–2747.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1996.

Decided May 20, 1996.

Donald F. Foley (argued), Mary F. McFearin, Foley & Pool, Indianapolis, IN, for Plaintiff–Appellant.

William T. Niemier, John S. Mercer (argued), Wood, Touhy, Gleason, Mercer & Herrin, Indianapolis, IN, for Defendants–Appellees.

Before CUMMINGS, CUDAHY, and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

This diversity case involves various claims which resulted from breaches of contract by general contractors and subcontractors involved in a major construction project. All of the basic liability issues have been resolved. The issues raised on appeal are of importance only for their effect on whether Controlled Demolition, Inc. (CDI) can recover attorney's fees pursuant to an Indiana statute governing the enforcement of liens. Ind.Code § 32–8–3–14. Specifically, CDI challenges the district court's grant of summary judgment on a statutory "personal liability" claim against the owner of the property for moneys it was owed by the general contractor, Ind.Code § 32–8–3–9; the grant of summary judgment as to CDI's attempt to foreclose a mechanic's lien on the property and the district court's finding that CDI owed an implied duty to indemnify the general contractor for funds the latter expended to settle mechanic's liens placed on the property by certain subcontractors. We affirm.

## I. Background

F.A. Wilhelm Construction Company was hired by Mansur Development Corporation to develop real estate located in Indianapolis, Indiana and owned by Mansur as a site for the corporate offices of Farm Bureau Insurance Company. In August 1990, in aid of its development efforts, Wilhelm entered into two separate contracts with CDI. The first agreement involved the removal of transformers containing PCBs from the premises of the planned Farm Bureau development. The second was a contract for general demolition work. CDI in turn subcontracted with Donald Lee Twichell, Jr., individually and doing business as DLT, Inc., (collectively, Twichell) to aid in removing the debris caused by the demolition. Twichell rented equipment from K & F Industries, Inc. for use in the project. Some of the rented equipment was owned by Carlisle Equipment Company, Inc. The work was completed in early 1991. However, CDI and Wilhelm became involved in a dispute, details of which are immaterial here, apparently occasioned by Twichell's failure to complete its subcontractual responsibilities in a timely fashion.

As a result of the dispute, Wilhelm did not pay CDI the balance due to it under the contract. Various disputes also erupted over the matter between CDI and its subcontractors.

On February 13, 1991, CDI filed two notices with the Marion County Recorder. The first detailed its intent to hold a mechanic's lien on the property, as allowed by Ind. Code § 32–8–3–3, in the amount of $344,-570.81. The second gave notice of a "personal liability claim" against Mansur, under Ind. Code § 32–8–3–9. This statute "provides that upon notice to the owner by a subcontractor ... of the subcontractor's claim against the contractor, ... the owner shall be liable to the subcontractor for that claim up to the amount that the owner owes the contractor." *Coplay Cement Company, Inc. v. Willis & Paul Group,* 983 F.2d 1435, 1436 (7th Cir.1993). In other words, this statute gives a subcontractor a direct claim against the owner for a general contractor's breach of its duty to pay the subcontractor.

Wilhelm's project manager, Terry Bareither, responded to these filings by mailing to CDI, on February 23, 1991, a certified Notice to Commence Suit, as set out in Ind.Code § 32–8–3–10. The letter stated that CDI was thereby "notified to commence suit within thirty (30) days of receipt of this Notice." Rec. Doc. 61, Exh. A. CDI was also informed in the letter that, as the statute provides, "[f]ailure to file suit within thirty (30) days after receipt of this notice shall cause the above identified lien to become null and void." *Id.* The original letter contained a typographical error in the statutory reference. CDI therefore responded on February 25, 1991, with a letter stating:

> Regarding your Notice to Commence Suit, my attorney advises me that I.C. 23–8–3–10 as listed in your certified mail covers hospital associations. If your intent was to file a legal notice, Terry, I think you will have to refile with appropriate Indiana Code notation.

Rec. Doc. 61, Exh. C.

Bareither sent a corrected notice on March 3, 1991. CDI did not file suit within thirty days of receiving the corrected notice, nor

respond to the notice in any other way. In fact, CDI did not file its suit on the mechanic's lien until July 26, 1991, after it received a Notice to Commence Suit directly from Mansur, the owner of the real estate. Rec. Doc. 11, Exh. E. That letter, mailed on June 25, 1991, was received by CDI on July 1, 1991.

Contending that Twichell had not met his obligations for the equipment used in the project, Carlisle and K & F also filed mechanic's liens against the property. While the district court proceedings attending the current suit were ongoing, Wilhelm, pursuant to an obligation to clear liens imposed by its contract with Mansur, settled the claims of Carlisle and K & F. Wilhelm then sought indemnification from CDI for this payment.

The district court dealt with a number of issues during the course of this lawsuit, only some of which are relevant to this appeal. We summarize the court's relevant actions here. The district court granted summary judgment against CDI on its mechanic's lien claim (Count VII of its Amended Complaint) and on its claim based on the Indiana personal liability statute (Count VI). Summary judgment on these claims was based on CDI's failure to respond in a timely fashion to Wilhelm's Notice to Commence Suit.

At trial, the court rendered judgment on all breach of contract claims related to the agreements between Wilhelm and CDI, granting CDI's claim that Wilhelm had breached the PCB contract (Count I) and finding that both Wilhelm and CDI had breached the demolition contract (Count II and Wilhelm Counterclaim Count I). The result of these findings was that Wilhelm was liable to CDI for $51,325.30 on the PCB contract. Wilhelm and CDI each recovered a judgment resulting from the other's breach of the demolition contract, with Wilhelm liable to CDI for $174,802.00 and CDI liable to Wilhelm for $133,254.30. At trial, the district court also found in favor of Wilhelm on the indemnification claim (which was related to the demolition subcontracts), in the amount of $45,000. Thus Wilhelm received a total judgment against CDI in the amount of $178,254.30. The net result of these deci-

sions was that CDI owed Wilhelm a sum somewhat over $3,000 stemming from the demolition contract. All judgments based on the dispute between CDI and Wilhelm have been satisfied. CDI also was granted a judgment against Twichell for its breach of its contract with CDI, and Twichell was required to indemnify CDI for losses resulting from Twichell's breach. CDI thus received a judgment against Twichell of $178,254.30— the amount of CDI's liability to Wilhelm.[1]

On appeal, CDI challenges three decisions of the district court: First, CDI argues that the court erred in finding that it failed to commence suit on the mechanic's lien in a timely fashion. It contends that Wilhelm was not authorized by the statute to issue the notice to commence suit on behalf of Mansur and, thus that the thirty-day time limit did not begin running until CDI received Mansur's letter on July 1, 1991. Second, CDI claims that the district court erred in dismissing its personal liability claim against Mansur since the thirty-day notice provision applies only to liens. Finally, CDI contends that the district court erroneously found that it had a common law duty to indemnify Wilhelm for its payments to Carlisle and K & F.

II. Analysis

Because CDI received indemnification from Twichell for all of its liability to Wilhelm and Mansur, it is not immediately apparent what CDI hopes to gain by pursuing this appeal. The answer to that puzzle is found in the attorney's fees provision of Indiana's mechanic's lien statute, which states:

> In all suits brought for the enforcement of any lien under the provisions of this chapter, if the plaintiff or lienholder shall recover judgment in any sum, he shall also be entitled to recover reasonable attorney's fees . . .

Ind.Code § 32–8–3–14.

Thus, if CDI is to recover from Wilhelm any attorney's fees related to this action, CDI must show that it 1) recovered a judgment; 2) in any sum; 3) in a suit brought for

---

1. On the same count of its complaint, CDI also recovered a judgment against Twichell related to

another project. This judgment is irrelevant here.

the enforcement of a lien. The district court's resolution of the lawsuit forecloses CDI's recovery. The court granted summary judgment against CDI on the mechanic's lien counts of its complaint (hence there was no successful suit brought for the enforcement of a lien). The court also found that Wilhelm's recovery from CDI on the demolition contract exceeded that of CDI from Wilhelm. Hence, under Indiana case law, there was no "judgment in any sum." CDI's appeal focuses on removing these barriers to its collection of attorney's fees.

## A. Summary Judgment on the Personal Liability Claim (Count VI)

On summary judgment, the district court treated both Counts VI (personal liability under Ind.Code § 32–8–3–9) and VII (foreclosure of mechanic's lien) of CDI's complaint as suits to foreclose mechanic's liens on Mansur's property. It thus applied the thirty-day limit on time to commence suit to both counts. This confusion is perhaps not surprising, given that CDI labeled Count VI, "Subcontractor's Complaint for Foreclosure of Mechanic's Lien on Proceeds of Contract" and that the statute under which the claim was brought is entitled "Subcontractor's, journeymen or laborer's liens; notice; actions." However, CDI is correct in stating that this subsection of the Indiana Code, while it resides in the middle of the Mechanic's Lien statute, does not actually deal with liens. This portion of the Indiana Code, instead, creates a right for subcontractors to sue owners of property directly when a general contractor fails to pay them. The subsection does not create a secured interest. *Coplay*, 983 F.2d at 1436.

However, while CDI thus succeeds in convincing us that the district court erred in granting summary judgment on Count VI, its victory in this regard is insubstantial. As Defendants correctly note, the judgments on CDI's breach of contract claims against Wilhelm (Counts I & II), now fully satisfied, render Count VI entirely moot. The personal liability statute grants a cause of action by a subcontractor against the owner only so long as the general contractor fails to pay. CDI has now received complete satisfaction

of the debt owed to it by Wilhelm. Therefore, no claim against Mansur remains and the district court's error in dismissing Count VI left no ill effects. In any event, CDI's argument that the personal liability claim is unaffected by the thirty-day filing limitation simply because the claim is not a lien, proves too much with respect to CDI's attempt to collect attorney's fees under § 32–8–3–14. That statute, too, applies only to liens. The Indiana Supreme Court has held that, since § 32–8–3–9 does not create a lien, attorney's fees are not available under § 32–8–3–14 for suits under § 32–8–3–9. *McCorry v. G. Cowser Construction, Inc.*, 644 N.E.2d 550 (Ind. 1994), adopting the opinion in *McCorry v. G. Cowser Construction, Inc.*, 636 N.E.2d 1273 (Ind.App. 5 Dist.1994). Thus, even if the district court had allowed Count VI to proceed, CDI would have garnered no eligibility to collect attorney's fees nor would it have recovered any damages in excess of those it has already recovered from Wilhelm.

## B. Summary Judgment on the Mechanic's Lien Claim (Count VII)

The district court's grant of summary judgment on CDI's attempt to foreclose its mechanic's lien was premised on its conclusion that CDI forfeited its right to sue on that lien when it failed to respond in a timely fashion to Wilhelm's Notice to Commence Suit. CDI argues that it bore no responsibility to respond to Wilhelm's letter because Wilhelm lacked authority to provide the required notice. The statute in question states:

> The owner of property upon which a mechanic's lien has been taken, or any person or corporation having an interest therein, including mortgagees and lienholders, may notify, in writing, the owner or holder of the lien to commence suit thereon and if he fails to commence such suit within thirty (30) days after receiving such notice, the lien shall be null and void . . .

Ind.Code § 32–8–3–10.

The district court found that, as a general contractor which "was responsible for seeing that liens filed against the project were cleared" and which "had the right to file a lien on the property," Wilhelm qualified as a

"person or corporation having an interest [in the property]." Additionally, the district court found that Wilhelm was Mansur's agent and, thus, could equally well be deemed to have filed the notice on Mansur's behalf.

▍ The question of the standing of a general contractor to issue notice under § 32–8–3–10 apparently is one of first impression. CDI has, therefore, relied heavily on policy arguments suggesting that general contractors should not be allowed to send notices on an owner's behalf. The governing consideration in these arguments is the danger that the general contractor, whose interests are often adverse to those of the owner, will undermine the owner's ability to resolve its disputes with lienholders. In this regard, CDI cites a general policy of the law to discourage litigation. *Lafayette Tennis Club, Inc. v. C.W. Ellison Builders, Inc.*, 406 N.E.2d 1211, 1214–15 (Ind.App. 3 Dist.1980).

CDI also argues that, since the examples given in the statute of "person[s] having an interest therein" are mortgagees and lienholders, the statute should be construed to require that persons authorized to give notice have a recordable interest in the property. It contends that the statutory omission of agents in the list of authorized notice givers should be understood to imply that the Indiana legislature did not intend for agents of the owner to have the power to issue the required notice. Alternatively, CDI argues that there was insufficient proof of the required agency relationship in this case.

The defendants argue that Wilhelm had authority to issue the Notice to Commence Suit, even independent of its agency relationship to Mansur, because of its status as a potential lienholder (because of the right it would have had to file a lien against the property had Mansur failed to make payment to Wilhelm).

We doubt that the Indiana statute extends so far as to provide "potential" lienholders a right to issue a Notice to Commence Suit. We also agree with CDI that there might be cases in which an owner might not wish to grant a general contractor the right to foreclose liens on its property. We need not assess the general validity of either of these arguments, however, for, in this case, we conclude that Wilhelm had a right to issue the Notice to Commence Suit under the terms of its contract with Mansur.

▍ First, we reject CDI's argument that, in order to issue a Notice to Commence Suit, the issuer itself must have a recordable interest in the property. We see no indication that ordinary principles of agency were not intended to apply in construing the statute. The issuance of legal notice is commonly undertaken by agents (in many cases, attorneys), and CDI does not persuade us that an exception to this ordinary practice was intended here. (Indeed, a corporation has no alternative but to issue notice through the hand of an agent.)

We also see no reason to confine the owner's choice of agent for the task. It may be, as CDI suggests, that many owners prefer not to grant power to a general contractor to issue a Notice to Commence Suit upon liens against the property which the contractor is developing. Here, however, the district court found (and CDI does not dispute) that "Wilhelm was responsible for seeing that liens filed against the project were cleared." Dist.Ct. Nov. 10, 1992 Op., CDI App. at 8. Further, the uncontested affidavit of Wilhelm's Project Manager, Bareither, states that Wilhelm had a contractual obligation to indemnify Mansur against all liens filed by CDI and to maintain an escrow account containing funds sufficient to cover any mechanic's liens filed against the property. Bareither Aff., Rec. Doc. 63.

We therefore conclude that, in this case, Wilhelm had the authority to issue a Notice to Commence Suit on CDI's liens. Its contract with Mansur gave it the duty to clear liens from the property and the financial responsibility for any liens which were not cleared.[2] This contractual arrangement was Mansur's specific choice, thus obviating any need for us to decide whether owners generally would be at risk if general contractors

---

**2.** According to the undisputed assertion of the defendants' counsel at oral argument, this con- tract was on public file and, therefore, available to CDI.

were deemed by implication to be their agents for the purpose of issuing such notices. Further, we think it likely that Wilhelm's contractual obligation to indemnify Mansur with respect to CDI's mechanic's lien was sufficient to grant it an independent right to issue the required notice. Finally, as a point of equity, we note, as did the district court, that CDI registered no complaint against having been served notice by Wilhelm at the time it received Wilhelm's letter. Instead, CDI simply pointed out a typographical error and stood by.

Because we agree with the district court that Wilhelm had standing to issue the Notice to Commence Suit under § 32–8–3–10 and because CDI did not commence suit within thirty days of receipt of Wilhelm's notice, we affirm the district court's grant of summary judgment as to Count VII of CDI's Amended Complaint.

## C. Implied Indemnity

CDI finally contends that the district court erred in concluding that it had an implied duty to indemnify Wilhelm with respect to its settlement of the mechanic's liens taken out by K & F and Carlisle. Before turning to this issue, we note that, given our affirmance of the district court's dismissal of CDI's attempt to foreclose its mechanic's lien, CDI would not be entitled to attorney's fees, even if we found that the district court had erred in its decision on the indemnity claim. We also note that CDI prevailed in its claims for indemnification and breach of contract against Twichell (which was responsible for the filing of mechanic's liens by K & F and Carlisle), so that it has already recovered a judgment requiring Twichell to reimburse it for the cost of its indemnification of Wilhelm.

■ In any event, as the defendants point out, the issue of implied indemnity is not properly before this court. CDI failed to comply with Federal Rule of Appellate Procedure 10(b)(3) which requires that:

Unless the entire transcript is to be included, the appellant shall, within the 10–day time provided in paragraph (b)(1) of this Rule 10, file a statement of the issues the appellant intends to present on the appeal, and shall serve on the appellee a copy of the order or certificate and of the statement. An appellee who believes that a transcript of other parts of the proceedings is necessary shall, within 10 days after the service of the order or certificate and the statement of the appellant, file and serve on the appellant a designation of additional parts to be included.

Fed.R.App.Proc. 10(b)(3).

■ CDI's Statement of Issues on Appeal, Rec. Doc. 239, stated only its intent to challenge the district court's summary judgment decisions as to Counts VI and VII of its Amended Complaint. The purpose of Rule 10 is to ensure that each of the opposing parties has the opportunity to place before the appellate court those portions of the record which it deems relevant to the appeal. The defendants did not have that opportunity.

■ Under Indiana law of implied indemnity, "[a] person who, without fault, has been compelled to pay damages because of the wrongful conduct of another primarily liable may recover from such other for expenditures properly made in the discharge of such liability." Dist.Ct. Nov. 10, 1992 Op., CDI App. at 11, citing I.L.E. Indemnity § 5. From the limited record before us we do know that, under Article 11.2.6 of the contract between CDI and Wilhelm, CDI was responsible to pay for "all materials, equipment and labor used in, or in connection with, the performance of this Subcontract." Rec. Doc. 11, Exh. B. There was no clear error in the district court's determination that CDI was liable to Wilhelm for any failure by Twichell to pay K & F or Carlisle for use of equipment for the project.

Beyond this, however, CDI's argument that the district court incorrectly decided the implied indemnity issue relies on claims that Wilhelm was not compelled to pay K & F and Carlisle, CDI Br. at 37; that the district court failed "to adjudicate the amount of debt, if any, owed by Twichell to K & F and Carlisle and the reasonableness of such amount," CDI Br. at 33; and that "there has not been any determination that the forty-five thousand ($45,000.00) paid by Wilhelm to K & F and Carlisle was appropriate for the

services rendered by them on this project." CDI Br. at 35. The defendants complain that, because they were not notified that this issue would be raised on appeal, they were denied the opportunity to respond to these arguments by citing to relevant portions of the trial transcript.

CDI's only response to this Rule 10 argument is to point to various items in the record which it claims supports its version of events. This response misses the point of Rule 10 entirely. The point of Rule 10 is to give notice to the adverse party of issues which will be raised on appeal. Having been given notice of the issues which will be raised, the adverse party can ensure that parts of the transcript which it deems supportive of its case will appear in the record on appeal. The fact that CDI can list items in the record which arguably advance *its* cause does nothing to cure the effects of its Rule 10 violation. We therefore decline to review the district court's ruling on the implied indemnity issue, the outcome of which, in any event, has no bearing on the attorney's fees question which motivates this appeal.

III.   Conclusion

In conclusion, we affirm the district court's summary judgment on CDI's mechanic's lien claim (Count VII). Though we find that the district court erred in granting summary judgment on the personal liability claim (Count VI), we conclude that this claim has been rendered moot by the judgment and satisfaction of the breach of contract claims between Wilhelm and CDI. We find that the issue of implied indemnity is not properly before us on appeal, CDI having failed to comply with Rule 10(b)(3). The Rule requires that, unless the entire transcript forms part of the record on appeal, the opposing party be given notice of the issues to be raised on appeal, so as to provide opportunity for that party to supplement the record with those portions of the transcript it deems relevant. CDI did not list implied indemnity in its statement of issues, nor did it place the entire trial transcript into the appellate record. Therefore, CDI has waived the opportunity to advance its arguments on this issue.

AFFIRMED.